UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MARK OBINGER,                                    CIVIL NO.  04-4875 (ADM/JSM)

      Plaintiff,

v.                                               REPORT AND RECOMMENDATION

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

The above matter is before the undersigned United States Magistrate Judge on plaintiff's Motion for Summary Judgment [Docket No. 11] and defendant's Motion for Summary Judgment [Docket No. 18].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the reasons discussed below, it is recommended that the plaintiff's Motion for Summary Judgment be **DENIED** and that the defendant's Motion for Summary Judgment be **GRANTED**.

I.     **FACTUAL BACKGROUND**

Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423, was initially filed on June 3, 2002.  Tr. 73.  Plaintiff claims he became disabled as of April 1, 2001, due to degenerative disc disease, arthritis, [and] herniated disc."  Tr. 73, 100, 124

The Social Security Administration ("SSA") denied plaintiff's application initially and upon reconsideration.  Tr. 34-43, 46-49.  Plaintiff filed a request for a hearing by an Administrative Law Judge.  Tr. 50-51.  Plaintiff, who was represented by legal counsel,

1

received a hearing before the Administrative Law Judge Jerome J. Berkowotz ("ALJ") on March 30, 2004. Tr. 22. Testimony was taken at the hearing from plaintiff. Tr. 22, 478. In addition, testimony was taken from neutral medical expert Joseph Horozaniecki, M.D. ("ME"), and vocational expert ("VE") Stephen D. Bosch. Id. On April 27, 2004, the ALJ issued a decision to deny plaintiff benefits. Tr. 19-21, 22-33. Plaintiff filed a Request for Review of the ALJ's decision with the Appeals Council. Tr. 14-17. The Appeals Council denied plaintiff's request for review and upheld the ALJ's decision denying benefits to plaintiff, making the ALJ's findings the final decision of defendant. Tr. 9-11. See 42 U.S.C. § 405(g).

Plaintiff sought review of the ALJ's decision by filing the instant action with this Court pursuant to 42 U.S.C. § 405(g). The matter is now before the Court on plaintiff's Motion for Summary Judgment [Docket No. 11] and defendant's Motion for Summary Judgment [Docket No. 18].

## II.   PROCESS FOR REVIEW

Congress prescribed the standards by which Social Security disability benefits may be awarded: "[t]he Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." 42 U.S.C. § 1382(a); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Social Security Administration shall find a person disabled if the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). The claimant's impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§ 1382c(a)(3)(B).   The impairment must last for a continuous period of at least twelve months or be expected to result in death.   42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1509, 416.909.

### A.   Administrative Law Judge Hearing's Five-Step Analysis

If a claimant's initial application for benefits is denied, he or she may request reconsideration of the decision.   20 C.F.R. §§ 404.909(a)(1), 416.1409(a).   A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ.   42 U.S.C. §§ 405(b)(1), 1383(c)(1); 20 C.F.R. §§ 404.929., 416.1429, 422.201 et seq.   To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis, requiring the ALJ to make a series of factual findings regarding the claimant's work history, impairment, residual functional capacity, past work, age, education, and work experience.   See 20 C.F.R. §§ 404.1520, 416.920; see also Locher, 968 F.2d at 727.   The Eighth Circuit described this five-step process in Morse v. Shalala, 16 F.3d 865, 871 (8th Cir. 1994), vacated on other grounds, as follows:

> The first step asks if the claimant is currently engaged in substantial gainful employment.   If so, the claimant is not disabled.  If not, the second step inquires if the claimant has an impairment or combination of impairments that significantly limits the ability to do basic work activities.  If not, the claimant is not disabled.   If so, the third step is whether the impairments meet or equal a listed impairment; if they do, the claimant is disabled.   The fourth step asks if the claimant's impairments prevent her from doing past relevant work.   If the claimant can perform past relevant work, she is not disabled.   The fifth step involves the question of whether the claimant's impairments prevent her from doing other work.  If so, the claimant is disabled.

(citing 20 C.F.R. § 416.920).

**B.**     **Appeals Council Review**

If a claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, though review is not automatic.  20 C.F.R. §§ 404.967-404.982, 416.1467-416.1482.  The decision of the Appeals Council, or of the ALJ if the request for review is denied, is final and binding upon a claimant unless the matter is appealed to Federal District Court within 60 days of notice of the Appeals Council's action. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

**C.**     **Judicial Review**

Judicial review of the ALJ's decision generally proceeds by considering the decision of the ALJ at each of the five steps.  The Court is required to review the administrative record as a whole and consider:

1.     The credibility findings made by the ALJ.

2.     The plaintiff's vocational factors.

3.     The medical evidence from treating and consulting physicians.

4.     The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.     Any corroboration by third parties of plaintiff's impairments.

6.     The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth plaintiff's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989) (citing Brand v. Secretary of HEW, 623 F.2d 523, 527 (8th Cir. 1980)).

The review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Johnson v. Apfel, 210 F.3d 870, 874 (8th Cir. 2000); Clark v. Chater, 75 F.3d 414, 416 (8th Cir. 1996);  Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  "We

may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole." Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)); see also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see also Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (same).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). "It is not my job to decide the facts anew, reweigh the evidence, or substitute my judgment for that of the Commissioner. In this regard, I 'must consider both evidence that supports and evidence that detracts from the Secretary's decision, but may not reverse merely because substantial evidence exists for the opposite decision.'" Callison v. Callahan, 985 F. Supp. 1182, 1186 (D. Neb. 1997) (citations omitted).

The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson, 30 F.3d at 939. The Court should not reverse the Commissioner's finding merely because evidence may exist to support the opposite conclusion. INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992); Buckner, 213 F.3d at

1011; <u>Mitchell v. Shalala</u>, 25 F.3d 712, 714 (8th Cir. 1994).   Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."   <u>Gavin v. Apfel</u>, 811 F.2d 1195, 1199 (8th Cir. 1987).

A claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act.   <u>See</u> 20 C.F.R. §§ 404.1512(a), 416.912(a); <u>Thomas v. Sullivan</u>, 928 F.2d 255, 260 (8th Cir. 1991).   Once a claimant has demonstrated that he or she cannot perform prior work due to a disability, the burden of proof shifts to the Commissioner to show that the claimant can engage in some other substantial, gainful activity.   <u>Martonik v. Heckler</u>, 773 F.2d 236, 238 (8th Cir. 1985).

## III.   DECISION UNDER REVIEW

### A.   <u>Vocational Background</u>

Plaintiff was 43 years old at the time of the ALJ's decision.   Tr. 23, 109, 482.   He has received a General Equivalency Diploma ("GED").   Tr. 6, 106, 484.   Plaintiff has worked in the past as a warehouse worker, lift truck operator, realtor, and travel guide.   Tr. 116-21, 182.   On November 6, 2002, plaintiff received notice that the Department of Veterans Affairs ("VA") had approved his claim for service connected compensation disability retirement benefits.   Tr. 85.   In particular, the VA found that plaintiff was unable to work due to service-connected disabilities of depression, degenerative disc disease, pilonidal cyst subluxation of the right and left patella, and degenerative changes to his right knee.   Tr. 86.

**B.**   **ALJ's Findings of Fact**

The ALJ concluded that plaintiff was not entitled to disability insurance benefits under §§ 216(i) and 223 of the Social Security Act.  Tr. 33.  The ALJ based this decision on the following findings:

1.    The claimant meets the non-disability, insured status requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability of April 1, 2001.

3.    The claimant has degenerative disc disease with lower back pain and knee pain, obesity, acid reflux disorder, an affective disorder with a history of alcohol and cocaine substance abuse (in sustained remission since February 2003).  These impairments are "severe" within the meaning of the Regulations [20 CFR § 4041.520(c)].

4.    These medically determinable impairments do not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of this decision.

6.    The claimant retains the functional capacity to perform a range of sedentary work.  The claimant is able to sit for six out of eight hours and to walk for fifteen minutes out of every hour for a total of up to two out of eight hours.  The claimant is capable of lifting and carrying ten pounds occasionally. He is able to stoop or crouch up to a total of one-sixth of the workday in a non-repetitive manner.  He cannot kneel, squat, operate moving machinery, climb ladders or scaffolds, work at heights or around other hazards.  He is able to twist up to a 30 degree angle each direction for up to one-sixth of the workday.  The claimant is limited to simple, unskilled tasks with only brief, superficial contact with supervisors, co-workers and the general public. The claimant requires a low stress work environment without high production goals.

7. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

8. The claimant is a "younger individual" (20 CFR § 404.1563).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work to other work within his residual functional capacity (20 CFR § 404.1568).

11. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as sorting jobs, or as cashier or parking lot attendant.

12. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

Tr. 32.

## C.   **ALJ's Application of the Five-Step Process**

The ALJ made the following determinations under the five-step procedure.  At the first step, the ALJ concluded that plaintiff had not engaged in any substantial gainful activity since the alleged onset of disability and, therefore, plaintiff's application for benefits could not be denied because of work experience.  Tr. 23.  At the second step, the ALJ found that plaintiff had severe impairments consisting of degenerative disc disease with lower back pain and knee pain, obesity, acid reflux disorder, and an affective disorder with a history of alcohol and cocaine substance abuse (in sustained remission since February 2003.  Tr. 27.  At the third step, the ALJ determined that the record did not establish that plaintiff was subject to any impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments in

Appendix 1, Subpart P, Regulation No. 4.  Id.  At the fourth step, the ALJ found that

plaintiff had the residual functional capacity ("RFC") range to perform sedentary work.[1]

Tr. 28, 32.  Given this RFC, the ALJ determined that plaintiff was capable of performing

a significant number of jobs in the national economy including, sorting jobs, cashier, or

parking lot attendant.  Tr. 31.

## IV.   ISSUES UNDER REVIEW

In the present case, the ALJ determined that plaintiff maintained the following

RFC:

> The claimant retains the functional capacity to perform a
> range of sedentary work.  The claimant is able to sit for six
> out of eight hours and to walk for fifteen minutes out of every
> hour for a total of up to two out of eight hours.  The claimant
> is capable of lifting and carrying ten pounds occasionally.
> He is able to stoop or crouch up to a total of one-sixth of the
> workday in a non-repetitive manner.  He cannot kneel, squat,
> operate moving machinery, climb ladders or scaffolds, work
> at heights or around other hazards.  He is able to twist up to
> a 30 degree angle each direction for up to one-sixth of the
> workday.  The claimant is limited to simple, unskilled tasks
> with only brief, superficial contact with supervisors, co-
> workers and the general public. The claimant requires a low
> stress work environment without high production goals.

Tr. 32.

Plaintiff disagrees with this RFC determination.   In this regard, plaintiff asserts

the ALJ erred in failing (1) to give proper weight to the opinions of his treating physician,

---

[1]     20 CFR § 416.967(a) provides that sedentary work:

> [I]nvolves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files,
> ledgers, and small tools. Although a sedentary job is defined
> as one which involves sitting, a certain amount of walking
> and standing is often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met.

(2) to give proper consideration to the disability determination by the VA, (3) to follow proper principles of law in determining plaintiff's credibility, (4) to follow the Social Security Rulings regarding the significant erosion of the sedentary occupational base, and (5) to follow Social Security Regulations regarding reconciling the VE's testimony with the publication titled the "The Selected Characteristics of Occupations."

## V.   PLAINTIFF'S RFC

A claimant's RFC is what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).  The ALJ must determine a claimant's RFC by considering the combination of the claimant's mental and physical impairments.  See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  It is the claimant's burden, not the Commissioner's, to prove the RFC.  Id. at 1218 (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).  In determining a claimant's RFC, the ALJ must consider all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations.  Id.

The ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence."  Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000). Nonetheless, the RFC determination must be supported by "medical evidence that addresses claimant's 'ability to function in the workplace.'"  Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003) (quoting Nevland v. Apfel, 223 F.3d 853, 858 (8th Cir. 2000)).  The ALJ is not limited to consideration of medical evidence, "but is required to consider at least some supporting evidence from a professional."  Baldwin, 439 F.3d at 556 (citing 20 C.F.R. § 404.1545(c)).  If necessary, the ALJ should solicit opinions from claimant's treating physicians, or seek consultative examinations to help assess claimant's RFC.  Nevland, 204 F.3d at 858.

10

**A.   Opinion of Treating Physician**

The social security regulations provide that "a treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)).  Absent these two requirements, the ALJ need not accord controlling weight to a treating physician's opinion and the ALJ may not give a treating physician's opinion controlling weight based solely on the fact that he or she is a treating physician. Id. at 1013.  In addition, the ALJ is not required to assign special weight to a medical source's opinion on an issue reserved for the Commissioner.  See 20 C.F.R. § 404.1527(e)(1) (stating "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will find that you are disabled").

Plaintiff maintains that the ALJ did not accord the proper weight to the opinions of plaintiff's primary treating physician, Dr. Mary F. Hotchkiss, M.D., with regards to his RFC, and instead substituted his own lay opinion.  See Plaintiff's Memorandum of Law in Support of Summary Judgment ("Pl.'s Mem.") at pp. 18-19.  The ALJ in his decision stated that he considered the May 2003 statement of Dr. Hotchkiss, who opined that the claimant had lower back pain with sciatica[2] related to a service-connected injury and was unable to work.  Tr. 29.  However, the ALJ found that ultimate finding of disability rests with the Commissioner and as such, Dr. Hotchkiss' opinion was not entitled to special significance.  Tr. 29.

---

[2]   Sciatica: "Pain in the lower back and hip radiating down the back of the thigh into the leg . . . usually due to herniated lumbar disc compromising a nerve root, . . ." STEDMAN'S MEDICAL DICTIONARY (1995).

After reviewing the medical records and opinions of Dr. Hotchkiss, this Court finds that the ALJ accurately characterized them and gave them their proper weight.

One of the first references in the record of plaintiff's lower back problem was a July 31, 2001 x-ray performed on plaintiff's lower back.  Tr. 380.  The report found a moderate disc space narrowing with associated sclerosis and a slight spur formation. Id.  The opinion of the reviewing doctor was that there were "[d]egenerative changes, mainly disc space narrowing and degenerative sclerosis, spur formation at the l5-S1 level." Id.  An October 17, 2001 progress report by Dr. Sagayabama Rajakone, at the VA, noted that plaintiff complained of chronic back pain and rated his pain 5 out of 10. Tr. 348-49.  Plaintiff noted that he had a history of chronic back problems due to degenerative disc disease.  Tr. 348.  However, plaintiff denied any weakness in his legs. Tr. 349.  Plaintiff also denied any numbness or tingling sensation in his legs.  Id.

An April 2002 MRI of plaintiff's lumbar spine found no abnormalities to the lumbar region except for a disc bulge at the L5-S1 level causing a "minimal mass effect" touching the left S1 nerve root.  Tr. 378.  Plaintiff was examined by a neurologist on April 30, 2002, who found that plaintiff had "[n]ormal strength in arms and legs except mild dorsiflexion[3] L leg."  Tr. 211.  The neurologist's impression of plaintiff was that he had an old injury to his back that that was increasing in pain.  Id.  However, the neurologist found no new injury to the back.  Id.

The opinions from Dr. Hotchkiss in the record include a May 13, 2002 "To Whom it May Concern" letter, which provides in relevant part:

---

[3]    Dorsiflexion:   Upward   movement   (extension).  .  .  ."   STEDMAN'S  MEDICAL DICTIONARY (2000).

> I am the primary physician for Mark Obinger.  He has been evaluated several times at the VAMC for severe lower back pain + sciatica relating to a service related injury.  He has found to have a herniated lumbar disc accounting for the pain + he has been evaluated by a neurologist and has an upcoming neurosurgical appointment 6-28-02.  He is unable to work due to the pain and this disability will persist into the foreseeable future.

Tr. 337.

A September 5, 2002 x-ray of plaintiff's thoracic spine shows a "[m]ild, multilevel, degenerative disc disease of the thoracic spine, which is not significantly changed from the previous study."  Tr. 223, 328.  The x-rays also showed that the vertebral bodies were well aligned and that there was no evidence of fracture or dislocation.  Id.  A September 23, 2002 progress report by Dr. Rajakone stated that plaintiff complained of lower back pain and that after having an aborted discogram, he claimed that he began to experience pain in the back of his right leg, which was worse with sitting or raising the leg.  Tr. 339.  Dr. Rajakone assessed plaintiff with chronic low back pain.  Tr. 318, 340. Id.

A subsequent October 11, 2002 letter from Dr. Hotchkiss states in relevant part:

> [Plaintiff] has chronic, severe left side lumbar back pain radiating into the left buttock and his left leg.  The pain is exacerbated by movement, lifting, bending, stooping and weather changes. The pain has not improved with conservative measures.  He has been evaluated by neurologist and neurosurgeon.
>
> * * *
>
> Due to the back and leg pain, M. Obinger will not be able to return to his previous work in manual labor.

Tr. 475-76.  The October letter by Dr. Hotchkiss was in response to a request by plaintiff for compensation.  Tr. 467.

On October 21, 2002, plaintiff saw Dr. Hotchkiss for a follow-up visit.  Plaintiff complained of back pain and that he was taking about six codeine tablets per week.  Tr. 308.  Plaintiff was diagnosed with chronic lower back pain due to lumbar herniated disc, which had failed conservative therapy.  Tr. 309.  There is nothing in this note that indicates Dr. Hotchkiss performed any tests or reviewed any radiological reports in developing this assessment, except that she did note that plaintiff was ambulating slowly.  Id.  In addition, the note from Dr. Hotchkiss makes no mention of any complaints of leg pain by plaintiff.

On October 31, 2002, a state agency physician conducted a residual functional capacity assessment on plaintiff based on a review of his medical records.  Tr. 248-255.  Plaintiff was found to be able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk for 6 hours in an 8-hour work day, and sit for about 6 hours in an 8-hour workday.  Tr. 249.  The agency physician found no push pull limitation in his extremities, and a limited ability in plaintiff's push and pull abilities in his lower legs.  Tr. 249.  The agency physician cited to plaintiff's lower back pain as the reason for this assessment. Id.  The agency physician also found that plaintiff could occasionally climb ramps and stairs, however, he also found that plaintiff could not climb on ladders ropes or scaffolding.  Tr. 250.  In addition, the agency physician opined that plaintiff could balance frequently, stoop frequently, kneel occasionally, crouch occasionally, and crawl frequently.  Id.  The agency physician placed no manipulative, or communicative limitations on plaintiff.  Tr. 251-52.  The only environmental limitation placed on plaintiff was that he should avoid concentrated exposure to hazards such as machines and heights.  Tr. 252.  The state agency physician's findings were reviewed and affirmed by Dr. Jeffery Gorman, M.D.  Tr. 255.

14

The next medical entry regarding back pain is a May 12, 2003 nurse's note, almost seven months after his last visit with Dr. Hotchkiss, which provided that plaintiff had complained of chronic back pain with right leg numbness. Tr. 281. On May 12, 2003, plaintiff saw Dr. Hotchkiss for several health complaints including chronic back pain. Tr. 280, 439. Plaintiff also complained of increased leg pain. Id. Dr. Hotchkiss noted that plaintiff was taking codeine very sparingly, about 15 times a month. Id. In addition, Dr. Hotchkiss noted that plaintiff was helping to take care of his girlfriend's 5-year-old son who is autistic. Id. The only mention of a physical exam as it related to plaintiff's back and legs was that he ambulated slowly with a limp. Id. Dr. Hotchkiss' plan with regards to pain was to have plaintiff try using Naproxen[4] and she also issued a refill of his Codeine prescription. Tr. 281, 440.

On October 16, 2003, plaintiff spoke Dr. Hotchkiss over the telephone to discuss his functional limitations due to his back and leg pain. Tr. 433. The medical assessment had been requested by plaintiff's attorney for the hearing before the ALJ. Id. Dr. Hotchkiss stated in her note that she communicated to plaintiff that he would only be able to stand for 10-15 minutes, needs to change positions frequently, and is unable to bend, stoop, or climb. Id. Dr. Hotchkiss noted that plaintiff complained that pain and numbness radiated into both of his legs, his right leg would become numb when sitting or driving, and that at times, plaintiff's pain is so severe that he was unable to get out of bed. Id.

On November 12, 2003, Dr. Hotchkiss saw plaintiff for a follow-up on his back pain. Tr. 418. Dr. Hotchkiss stated in her progress note that "Mark is a 43 yr old man with chronic lower back pain due to lumbar disc disease. His pain is controlled on

---

[4]     Naproxen: "Nonsteroidal anti-inflammatory drug." THE PILL BOOK (2002).

codeine 30 mg tablets b.i.d. p.r.n." Id. There is no mention in the progress note of plaintiff making any complaint regarding pain or numbness in his legs. In addition, the only mention of an examination performed by Dr. Hotchkiss on plaintiff was that she reviewed plaintiff's vital signs, noted some edema[5] and that plaintiff walked with a limp. Tr. 419.

On March 3, 2004, Dr. Hotchkiss performed a medical assessment on plaintiff's ability to do work related activities. Tr. 374-77. In the assessment, Dr. Hotchkiss found that plaintiff had the ability to occasionally lift 10-15 pounds and frequently carry 0-5 pounds. Tr. 374. Dr. Hotchkiss also found that plaintiff could only stand an hour or less during an 8-hour workday. Tr. 375. Dr. Hotchkiss stated that the medical finding that supported this assessment was that plaintiff had degenerative disc disease. Id. In addition, Dr. Hotchkiss opined that plaintiff could only sit 2 hours total during an 8-hour workday and could only sit a half hour without interruption. Id. Dr. Hotchkiss stated that the medical findings that supported this opinion were that plaintiff suffered from lumbar degenerative disease with a disc bulge. Id. According to Dr. Hotchkiss, plaintiff could not climb, stoop, crouch, kneel or crawl, and could occasionally balance. Tr. 376. Dr. Hotchkiss attached medical records in support of these findings. Further, plaintiff stated that plaintiff had trouble reaching up, that his ability to feel in his legs and right arm were impaired due to numbness, and that plaintiff's ability to push/pull were impaired. Id. Dr. Hotchkiss stated that this finding was supported due to the disc bulge touching a nerve root. Id. Finally, Dr. Hotchkiss provided that plaintiff's condition limits his ability to be subjected to heights, moving machinery, temperature extremes, humidity, and

---

[5]    Edema: "An accumulation of an excessive amount of watery fluid in cells or intercellular tissues." STEDMAN'S MEDICAL DICTIONARY (2000).

vibrations.  Tr. 377.  Dr. Hotchkiss relied on the attached medical documents in support of this opinion.  Id.

The medical documents relied upon by Dr. Hotchkiss in making her March 2004 assessment of plaintiff included an April 2002 MRI of plaintiff's lumbar spine.  Tr. 378. The report finds no abnormalities as to the lumbar region except that there was a disc bulge at the L5-S1 level causing a "minimal mass effect" touching the left S1 nerve root. Id.  The other medical record relied upon by Dr. Hotchkiss was a July 31, 2001 x-ray performed on plaintiff's lower back.  Tr. 380.  The report found a moderate disc space narrowing with associated sclerosis and a slight spur formation.  Id.  The impression of reviewing doctor was that there were "[d]egenerative changes, mainly disc space narrowing and degenerative sclerosis, spur formation at the l5-S1 level."  Id.

The final medical treatment note regarding plaintiff's back or leg pain is a March 11, 2004 nurse's note stating that plaintiff claimed his pain level was 5 out of 10.  Tr. 392.  Plaintiff asserted that the pain was in his back.  Id.  No mention was made of leg pain.   Further, the nurse's note stated that plaintiff communicated that "[p]ain is unchanged since last visit; current pain treatment plan is satisfactory (or meets patient's pain goal)."  Tr. 393.

During the hearing, the ME testified that the medical evidence in the record evidenced that plaintiff was suffering from lumbar disc disease with chronic lower back pain and radiculopathy.[6]  Tr. 511-12.  The ME noted that he did not find any evidence in the record of neurological reflex loss or motor loss.  Tr. 512.  The ME found that plaintiff had the RFC to perform sedentary activity with the opportunity to change position 15

---

[6]     Radiculopathy: "Disorder of the spinal nerve roots."  STEDMAN'S MEDICAL DICTIONARY (2000).

minutes out of every hour.  Id.  The ME also found that plaintiff could not use ladders, scaffolds, hazardous machinery, kneel or squat.  Tr. 512-13.  Further, the ME opined that plaintiff could crouch and stoop, and twist at a 30 degrees (half of what would be considered normal) for less than one sixth of the day.  Tr. 512-13.  The ME took into account the prescriptions taken by plaintiff in coming up with the RFC.  Tr. 514-15.  Upon cross-examination by plaintiff's counsel on whether he believed Dr. Hotchkiss's RFC was unreasonable, the ME stated that it was not unreasonable.   Tr. 516.  However, the ME testified that he did not find any rationale in the medical record for Dr. Hotchkiss' statement that plaintiff is unable to work at a full-time position.  Tr. 515-16.

The ALJ gave proper weight to Dr. Hotchkiss' opinions regarding plaintiff's ability to work.  The ALJ is not required to assign special weight to a medical source's opinion on an issue reserved for the Commissioner.  See 20 C.F.R. § 404.1527(e); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ("'[S]tatements that a claimant could not be gainfully employed 'are not medical opinion but opinions based on the application of the statute, a task assigned solely to the discretion of the [Commissioner].'") (quoting Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996), quoting Nelson v. Sullivan, 946 F.2d 1314, 1316 (8th Cir. 1991)).

This Court also finds that the ALJ did not substitute his own opinion for that of plaintiff's treating physician.   The ALJ cannot determine plaintiff's RFC without a medical opinion to support that opinion.  See Lauer v. Apfel, 245 F.3d 700, 703-04 (8th Cir. 2001).  In this case, the ALJ indicated in his decision that he gave significant weight to the testimony of the ME, Dr. Horozaniecki, in determining plaintiff's RFC  (Tr. 30).  See 20 C.F.R. § 416.927(f) (allowing the ALJ to ask for and consider opinions from medical experts on the nature and severity of a claimant's impairments).

Further, this Court concludes that the ALJ's decision not to rely on Dr. Hotchkiss' determination of disability and physical limitations for plaintiff is supported by substantial evidence in the record.  First, the objective medical evidence in the record does not support Dr. Hotchkiss' limitations placed on plaintiff.  This Court does not dispute that the record supports a finding that plaintiff is suffering from degenerative disc disease with disc bulging and nerve root involvement at the L5-S1 level.  The ALJ has acknowledged as such.  Tr. 29, 32.  What is absent from the medical  record is any objective evidence supporting plaintiff's ability to function.  The only medical evidence indicating testing of plaintiff's ability to function was an April 30, 2002 neurologist report. In that report, the neurologist found that plaintiff had "[n]ormal strength in arms and legs except mild dorsiflexion in the left leg.  Tr. 211.  Based on the record presented to this Court, Dr. Hotchkiss' personal observations of plaintiff's ability to function was limited solely to the fact that he walked slowly with a limp and plaintiff's own subjective complaints of pain.  Tr. 280, 309, 418, 440.  No other mention is made in plaintiff's medical progress reports, including the notes by Dr. Hotchkiss, regarding tests or observations on plaintiff's ability, or lack thereof, to function (i.e., sit, stand, lift, etc.).

Second, the medical documents relied upon by Dr. Hotchkiss in making her March 2004 assessment of plaintiff were an April 2002 MRI of plaintiff's lumbar spine and July 31, 2001 x-ray.  Tr. 378.  The MRI report found no abnormalities as to the lumbar region except that there was a disc bulge at the L5-S1 level causing a "minimal mass effect" touching the left S1 nerve root.  Id.  A July 2001 x-ray performed on plaintiff's lower back found moderate disc space narrowing with associated sclerosis and a slight spur formation.  Tr. 380.  The impression of reviewing doctors was that there were "[d]egenerative changes, mainly disc space narrowing and degenerative

sclerosis, spur formation at the L5-S1 level.   Id.   Again, the Commissioner is not contesting that plaintiff is suffering from degenerative back disease with some root impingement.   Tr. 32.   However, what these records do not show is how plaintiff's disease impairs his ability to work.   What is even more unclear, is how Dr. Hotchkiss was able to find that plaintiff was disabled when plaintiff only went to see her for back related pain three times between 2001-2004, and there is no evidence that she conducted an examination on plaintiff's ability to function in those visits that would support the limitations imposed.   Tr. 308-09, 279-281, 418-20.

Third, Dr. Hotchkiss' own medical progress notes contradict her assertion that plaintiff is unable to work.   A treating physician's opinions are entitled to less weight if they are contradicted by the physician's evaluations of the claimant.   See Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (holding that an "ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions.") (citation omitted).   In particular, the last medical record regarding Dr. Hotchkiss' treatment of plaintiff, November 12, 2003, stated "plaintiff is a 43 yr old man with chronic lower back pain due to lumbar disc disease. His pain is controlled on codeine 30 mg tablets b.i.d. p.r.n."[7]   Tr. 418 (emphasis added).   Dr. Hotchkiss' finding that plaintiff's back pain is under control with the use of medication cuts against her opinion that plaintiff is unable to work, especially when her limitations for him appeared to based in large part on plaintiff's subjective complaints of pain.   See East v. Apfel, No. 98-1970, 1999 WL 364316 at *1

---

[7]   Further, a March 11, 2004 nurse's note at the VA, the next medical entry in the record after his November 12, 2003, visit with Dr. Hotchkiss, provides that plaintiff communicated that his "[p]ain was unchanged since last visit; current pain treatment plan is satisfactory (or meets patient's pain goal)."   Tr. 393 (emphasis added).

(8th Cir. May 28, 1999) (conditions that can be treated with medication are not disabling) (citing Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996)).

Fourth, other physician opinions contradict Dr. Hotchkiss' opinion of functional limitations based on back and leg pain. Two state agency physicians found, based on the review of the record, that plaintiff had the RFC to perform work with a "light" exertional limit (sit, stand and/or walk 6 out of 8 hours, lift 20 pounds occasionally and 10 pounds frequently) with only a limited ability in the push and or pull ability in his lower legs. Tr. 249, 255. The ME found that plaintiff had the RFC to perform sedentary activity, with additional limitations. Tr. 511-13. In addition, the ME testified that he did not find any rationale in the medical record for Dr. Hotchkiss' statement that plaintiff was unable to work at a full-time position. Tr. 515-16. Even the findings by the VA contradict the limitations put in place by Dr. Hotchkiss. The VA found that plaintiff could bend up to 75 degrees and arch his back 7 degrees. Tr. 91. Plaintiff exhibited only mild loss of motion laterally and with rotation. Id. In addition, the VA noted that plaintiff could "stand on heels and toes and squat without difficulty." Id. This is contrary to Dr. Hotchkiss' opinion that plaintiff could only stand for less than an hour per day or could not bend. Tr. 375-76, 433.

In summary, the ALJ's decision to not give the plaintiff's treating physician controlling weight with regard to her finding of disability or extreme functional limitations is supported by substantial evidence, as Dr. Hotchkiss' opinions were not supported by objective clinical findings and were inconsistent with her own progress reports and the opinions of other medical experts. See Prosch, 201 F.3d at 1012-13 (quoting 20 C.F.R. § 404.1527(d)(2)) (concluding that the ALJ was correct in not giving controlling weight to a treating physician's opinion where such opinion was unsupported by clinical signs and

21

inconsistent with the physician's own prior evaluations); see also 20 C.F.R. §
404.1527(d)(3) ("The more a medical source presents relevant evidence to support an
opinion, particularly medical signs and laboratory findings, the more weight we will give
that opinion. The better an explanation a source provides for an opinion, the more
weight we will give that opinion.").

### B.    Disability Finding by the Department of Veterans Affairs

It is plaintiff's position that the ALJ failed to give proper consideration to the
disability determination by the VA.   See Pl.'s Mem. at p. 22.   In particular, plaintiff
claimed that the disability rating decision by the VA is supportive of a finding of a
disability as it relates to plaintiff's depression and degenerative disc disease.   Id. at p.
23.   The record shows that in November of 2002, the VA notified plaintiff of an increase
for service related compensation.   Tr. 85. As a part of its determination, the VA
assigned a 50% disability effective June 22, 2002, for depression.   Tr. 86.   The VA also
increased the disability of assignment for degenerative disc disease in the thoracic and
lumbrosacral spine from 10% to 40%.[8]   Id.   The ALJ considered plaintiff's VA disability
status in his ultimate decision not to award plaintiff social security disability benefits.   Tr.
28-29.

Social Security regulations provide in relevant part that:

> A decision by any nongovernmental agency or any other
> governmental agency about whether you are disabled or
> blind is based on its rules and is not our decision about
> whether you are disabled or blind. We must make a disability
> or blindness determination based on social security law.
> Therefore, a determination made by another agency that you
> are disabled or blind is not binding on us.

---

[8]    The VA also assigned a 10% disability rating for each of the following ailments:
pilonidal cyst, subluxation, left patella; subluxation, right patella; and degenerative
changes of the right knee.  Tr. 86.

20 CFR § 404.1504.

The disability determination by another agency is not binding on the Commissioner considering a Social Security applicant's claim for disability benefits. See Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998) (citing Jenkins v. Chater, 76 F.3d 231, 233 (8th Cir. 1993)). An "ALJ should consider the VA's finding of disability, but the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits." Pelkey v. Barnhart, --- F.3d ----, 2006 WL 8474 at *3 (8th Cir. 2006) (citations omitted); see also Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir. 1994) ("There is no support for [the claimant]'s contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards.").[9]   This Court will now proceed with addressing the VA's disability designation for depression and degenerative disc disease.

     1.   <u>Depression</u>

With regards to depression, the VA concluded that affect was appropriate and that plaintiff's speech was normal, coherent and relevant. Tr. 90. Although plaintiff complained of trouble sleeping, he denied any nightmares or sleepwalking. Id. There was no evidence of psychosis. Tr. 91. The VA report notes that plaintiff was "tearful, depressed and in obvious discomfort." Id. Based on this, and a review plaintiff's file,

---

[9]    Plaintiff also appears to be implying that the ALJ committed reversible error because he did not consider the VA's determination. See Pl.'s Mem. at p. 22. The Court rejects this assertion. The ALJ considered the VA's finding and found that it was not binding on the Commissioner. Tr. 28-29. Moreover, ALJ considered the record relied upon by the VA in his determination, to the extent it was provided to him by the plaintiff. Tr. 24, 90. Although he did not specifically mention the 40 percent figure, the ALJ did not err because he considered the available evidence underlying the VA's final conclusion that plaintiff was 40 percent disabled. See Pelkey, --- F.3d ----, 2006 WL 8474 at *4.

the VA determined plaintiff was depressed with a Global Assessment of Functioning ("GAF") of 50.[10]  Id.  This Court finds that the substantial evidence in the record supports the ALJ's decision not to give substantial weight to the VA determination regarding depression.

On September 4, 2002, plaintiff reported during a psychiatric evaluation, with Alford S. Karayusuf, M.D., that he had never been treated for depression but that he thinks about killing himself everyday.  Tr. 24, 90, 183, 186.  Dr. Karayusuf diagnosed plaintiff with depression.  Tr. 185.  Dr. Karayusuf found the following RFC for plaintiff: "He is able to understand, retain, and follow simple instructions.  He is restricted to work that involves brief, superficial interactions with fellow workers, supervisors, and the public.  Within these parameters and in the context of performing only simple, routine, repetitive, concrete, tangible tasks, he is able to maintain pace and persistence."  Id.

On February 8, 2003, the VA was contacted by plaintiff's girlfriend, who reported plaintiff was suicidal.  Tr. 462.  Plaintiff stated that he had some thoughts of suicide, but denied any plan or intent to act on such thoughts.  Tr. 461-62.  Plaintiff also stated that although he had been assessed with a 50% disability for depression by the VA, he was

---

[10]     The Global Assessment of Functioning scale is used to assess an individual's overall level of functioning.  Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 662 n. 2 (8th Cir. 2003) (citing the Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000 Revision)).   The lower the score, the more serious the individual's symptoms.  See id.  A GAF of 65 would indicate mild symptoms (eg., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, having some meaningful interpersonal relationships.  See Diagnostic And Statistical Manual Of Mental Disorders 34 (4th ed. Text Revision).  A GAF of 60-51 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and coworkers.  Id.  A GAF of 50 is indicative of serious symptoms including suicidal ideation or serious impairment in social, occupational, or school functioning.

"never referred to a psychiatrist and has never been treated at the Mpls VA for mental health or CD issues."  Tr. 463.

In addition, a March 11, 2003 psychiatric evaluation reported that plaintiff had never sought treatment for depression.  Tr. 455, 296.  Plaintiff reported sleeping and eating well.  Id.  Plaintiff reported that his memory was good but that he was very emotional.  Id.  He also reported in the March 2003 evaluation that he contemplated committing suicide in November.  Tr. 455.  The mental examination showed that plaintiff was alert and orientated, well groomed, had fluent speech with normal rate and rhythm, had logical and lucid thought, fair insight and judgment, good memory and attention, and was not suicidal.  Tr. 456.  Plaintiff was not assessed with depression and stated that he preferred not to take antidepressants at the time of the examination.  Id.   He was assigned a GAF of 55.  Id.

A December 2, 2003 progress note provided that plaintiff had been taking antidepressants and was responding positively to them.  Tr. 414.  Plaintiff reported that he had no suicidal ideations, had improved energy, improved mood and better concentration.  Tr. 412-13.  His was alert and well-orientated, well groomed, his speech was normal, he displayed logical thinking, and his insight was fair.  Tr. 413.  His GAF was reported as 65.  Id.  Plaintiff was assessed with depression disorder not otherwise specified ("NOS").  Tr. 413.

A February 24, 2004 medical entry indicated that plaintiff's mood was stable and that plaintiff was "holding his own."  Tr. 395-96.  Plaintiff reported no suicidal ideation, that he was sleeping too much, and that he had a good appetite.  Tr. 396.  In addition, plaintiff was reported to be alert and oriented, with normal speech.  Id.  He was mildly depressed, mainly due to his relationship with a significant other.  Id.  He had normal

affect with logical thinking, no delusions, fair insight, and good concentration/memory. Id. Plaintiff was diagnosed with depression NOS and a GAF of 60. Id.

This Court finds that the ALJ's determination that plaintiff was not disabled based on depression is supported by substantial evidence in the record. First, it must be noted that there are no medical records at the time of, or prior to the VA disability determination in November of 2002, that mention plaintiff suffering from depression except for the evaluation done by Dr. Karayusuf in September 2002. Regardless, the limitation placed on plaintiff by Dr. Karayusuf was incorporated in the RFC determined by the ALJ. Tr. 32, 185. Further, as of March 2003, plaintiff stated that he had not sought or received treatment for depression. Tr. 296, 455, 463. As such, the ALJ did not error in rejecting the VA's disability of designation for the timeframe of the report. Although plaintiff was found to have been suffering from depression, after March 2003 his condition appeared to under control when he was on anti-depressant medications (Tr. 414). See East, 1999 WL 364316 at *1 (conditions that can be treated with medication, including depression, are not disabling) (citing Nguyen, 75 F.3d at 431). Further, there no opinions from any of plaintiff's medical providers in the record that plaintiff's depression required any functional limitations that would affect his ability to properly function in the workplace. In addition, this Court notes that the ALJ did take into account plaintiff's emotional state by limiting him to simple, unskilled tasks with only brief, superficial contact with supervisors, co-workers and the general public. Tr. 26. As, such, this Court finds that the ALJ properly took into account the VA's designation of 50% disability due to depression based on the substantial evidence in the record.

   2.   Degenerative Disc Disease in the Thoracic and Lumbrosacral Spine

The VA concluded that plaintiff had a 40 percent disability due degenerative disc disease of the thoracic and lumbrosacral spine.  Tr. 91.  However, the VA does not distinguish between what percentage should be assigned to the thoracic spine as opposed to the lumbrosacral spine.[11]  In its findings, the VA noted that an MRI of 2002 showed a bulging effect at the level of L5-S1 touching the left S1 nerve root.  Id.  The VA noted mild tenderness to lumbrosacral spine between the L4 and S1.  Id.  Plaintiff could bend up to 75 degrees and arch his back 7 degrees.  Id.  Plaintiff exhibited only mild loss of motion laterally and with rotation.  In addition, the VA noted that plaintiff could "stand on heels and toes and squat without difficulty."  Id.   The VA found that 40 percent disability rating was appropriate because of reoccurring attacks of severe disc syndrome with only intermittent relief.  Tr. 92.  The VA refused to assign plaintiff a disability rating of 60% as there was no pronounced disc syndrome compatible with sciatic neuropathy, characteristic pain or other appropriate neurological findings appropriate to the site of the diseased disc.  Id.

There is no support for plaintiff's contention that his forty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under Social Security standards.  The VA's own evaluation demonstrates that plaintiff had the ability bend up to 75 degrees, arch his back 7 degrees had only mild loss of motion laterally and with rotation and could stand on heels and toes and squat without difficulty.  Tr. 91.  More telling, is the VA's refusal to designate a 60% disability,

---

[11]     A September 5, 2002 x-ray of plaintiff's thoracic spine only showed a "[m]ild, multilevel, degenerative disc disease of the thoracic spines, which is not significantly changed from the previous study."  Tr. 223, 328.  The x-rays also showed that the vertebral bodies were well aligned and that there was no evidence of fracture or dislocation.  Id.

as there was no evidence of pronounced invertabral disc syndrome.  Tr. 92.  As such, this Court finds that VA determination does not warrant a finding of disability.

### C.    Erosion of Sedentary Occupational Base

Plaintiff argued that the ALJ's decision is not based on substantial evidence as the plaintiff's need to change position every 15 minutes out of every hour combined with the limitation of stooping only one-sixth of the day and not repetitively, significantly erodes the sedentary occupational base, thereby necessitating a finding of disability. See Pl.'s Mem. at p. 27 (citing Social Security Ruling ("SSR") 96-9p).  Contrary to plaintiff's assertion, "SSR 96-9p does not mandate a finding of disability. Instead, the ruling provides that an ALJ should consult a VE when the claimant is limited by an inability to stoop, and the ruling states that consulting with a VE may be helpful when a claimant must alternate between sitting and standing."  Long v. Massanari, No. CV-00-1037-HA, 2001 WL 34047108 at *8 (D. Or., June 29, 2001).   In fact, the ruling provides that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled'."    SSR 96-9p, Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185 at *1 (SSA July 2, 1996).  Furthermore, the "mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability. There may be . . . jobs that exist in significant numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded."  Id. at *4.  The ruling authorizes an ALJ, to the extent of the erosion of the unskilled sedentary occupational base is not clear, to use the resources of a vocational specialist or vocational expert.  Id. at *9.  The vocational expert may then be asked to provide any or all of the following:

> An analysis of the impact of the RFC upon the full range of sedentary work, which the adjudicator may consider in determining the extent of the erosion of the occupational base, examples of occupations the individual may be able to perform, and citations of the existence and number of jobs in such occupations in the national economy.

Id.

In this case, the ALJ asked the VE at the hearing to consider a sedentary level of work for plaintiff.  He also asked the VE to take into account that plaintiff could only "stoop . . . less than one-sixth of the day and not repetitively" and that plaintiff had to be allowed to stand or walk for fifteen minutes out of every hour so he could change positions.  Tr. 527.  Despite these limitations to the sedentary base level, the VE found that such an individual could perform the jobs of sorter, cashier, and parking attendant, which numbered 12,500 to 13,000 in the state of Minnesota.  Tr. 527.  As such, this Court finds that the ALJ did not fail to take into account the erosion of the sedentary base.

### D.    Plaintiff's Subjective Testimony

Failure to give some consideration to a claimant's subjective complaints is reversible error.   Brand v. Secretary of the Dept. of Health, Educ. and Welfare, 623 F.2d 523, 525 (8th Cir. 1980).  "[A] headache, back ache, or sprain may constitute a disabling impairment even though it may not be corroborated by an x-ray or some other objective finding."   Id.  An ALJ must consider a claimant's subjective complaints, regardless of whether they are corroborated by objective medical findings.  Id.; see also Cline v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991).  On the other hand, "we will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility."  Id. (citing Woolf, 3 F.3d at 1213).

In considering a claimant's subjective complaints of disability, the ALJ must assess the claimant's credibility, applying the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (vacated on other grounds by Bowen v. Polaski, 476 U.S. 1167 (1986)).  The Polaski factors require the ALJ to give full consideration to all the evidence presented relating to a claimant's subjective complaints, including prior work record, and observations of third parties and treating and examining physicians relating to such matters as:

1.    the claimant's daily activities;

2.    the duration, frequency, and intensity of the pain;

3.    precipitating and aggravating factors;

4.    dosage, effectiveness, and side effects of medication;  and

5.    functional restrictions.

Id.; see also Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998) (same); Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir. 1996) (same); Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) (same); Cline, 939 F.2d at 565 (same); Callison, 985 F. Supp. 1182, 1186 (D. Neb. 1997) (same).  "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." Cox, 160 F.3d at 1207.

"An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole." Johnson, 87 F.3d at 1017 (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).  "The ALJ may discount a claimant's allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence." Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); see also Cox, 160 F.3d at 207.  The ALJ may not disregard a

claimant's subjective complaints solely because he or she believes the objective medical evidence does not support them.   Griffon v. Bowen, 856 F.2d 1150, 1154 (8th Cir. 1988).

If the ALJ rejects a claimant's complaint of pain, "the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony."   Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991).   "It is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in  Polaski when making credibility determinations."  Cline, 939 F.2d at 565.

Here, plaintiff argued that the ALJ and the Appeals Council erred by failing to afford credibility to plaintiff's subjective complaints of pain.  Specifically, plaintiff argued that the ALJ limited himself to only two factors in the Polaski analysis: (1) treatment other than medications and (2) plaintiff's activities of daily living.  See Pl.'s Mem. at p. 25.  Plaintiff also asserted that the ALJ's credibility finding was inconsistent with the objective medical evidence and is contrary to the opinions of Dr. Hotchkiss and the VA. Id.

The ALJ found that plaintiff's subjective allegation of impairment only partially credible because of significant inconsistencies in the record.  Tr. 28.  In coming up with this determination, the ALJ noted that the record shows that the claimant's impairments do impose limitations on the types of work that he is capable of performing.  Id.  The ALJ noted that plaintiff participated in physical therapy and has taken codeine and other medications in order to relieve back and knee pain.  Id.  The ALJ also discussed the lack of back surgery or aggressive physical rehabilitation.  Id.  In addition, the ALJ went into length regarding plaintiff's testimony as to his limitations and his daily activities.  Id.

The Court notes that the ALJ did not explicitly and discretely analyze plaintiff's credibility in the format set forth under Polaski.  Instead, the ALJ interwove the analysis of plaintiff's subjective complaints into his discussion.   While it might have been preferable that the ALJ specifically addressed each of the Polaski factors separately, the mere absence of such discussion does not render the ALJ's determination invalid. See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (finding that although the ALJ had not explicitly articulated his credibility determination, he did so implicitly by evaluating the claimant's testimony under the Polaski factors and by identifying inconsistencies between the claimant's statements and evidence in the record); see also Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (holding that ALJ was not required to methodically discuss each Polaski consideration, so long as he acknowledged and examined those considerations).

In this case, the ALJ's credibility determination is supported by substantial evidence in the record as a whole.  First, this Court notes that the ALJ did take into account plaintiff's subjective complaints of pain.  The ALJ found that plaintiff's subjective complaints were partially credible as the record showed that his impairments imposed limitations on the types of work that plaintiff could perform.  Tr.  28.  This is reflected in the sedentary RFC designated to plaintiff.  In other words, the ALJ was not denying that plaintiff is experiencing pain.  Ultimately, the question the ALJ must answer was not whether plaintiff experienced pain, but whether plaintiff's subjective complaints prevent him from performing any type of work.  See McGinnis v. Chater, 74 F.3d 873, 874 (8th Cir. 1996) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)).

There is evidence in the record that plaintiff alleged he was experiencing pain, however, there is an absence in the record to support the severity of pain claimed by

plaintiff.  See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003) ("The lack of supporting evidence may be used as 'one factor to be considered in evaluating the credibility of testimony and complaints.'") (quoting Polaski, 739 F.2d at 1322). "Evidence of effective medication resulting in relief, for example, may diminish the credibility of a claimant's complaints."  Guilliams v. Barnhart, 393 F.3d 798, 803 (8th Cir. 2005) (citing Rose v. Apfel, 181 F.3d 943, 944 (8th Cir. 1999)).  Plaintiff's claims of disabling pain precluding him from engaging in any employment in the national economy is undercut by the statements to his treating physician that his pain was under control and to a VA nurse that his current pain treatment plan was satisfactory.  Tr. 393. 418.

Further, plaintiff's credibility is undermined by plaintiff's desire to go to school and seek employment, as is evidenced by documents from vocational counselors.  A claimant's intention to work tends to prove that he is able to work.  See Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994).  In a December 32, 2001 letter from a Thomas Vocational Services stated that plaintiff wanted to seek employment as an emergency medical technician or pursue education as a registered nurse.  Tr. 173.  A March 6, 2002 letter from a vocational service provided that he had recent interview for a warehouse management position and for a computer position within a manufacturing and distribution company.  Tr. 168.  In addition, plaintiff expressed a desire to pursue retraining in the nursing field.   Tr. 169.   Plaintiff's attempts and desire to obtain employment and education are admirable.  At the same time, they place the credibility of his subjective complaints of pain in doubt.

In addition, the record shows that plaintiff was able to engage in a variety of activities throughout the period of time he claims to be disabled.    A    September    4,

2002 psychiatric examination note stated that plaintiff "plays cards and games on the computer 5 to 6 hours a day."  Tr. 184.  Plaintiff also reported to his treating physician that he takes care of his girlfriend's 5-year-old autistic son.  Tr. 280.  Plaintiff admitted to watching his friend's children in exchange for rent reduction on a daily basis.  Tr. 135, 137.  Plaintiff is able to cook for himself and breakfast a child on a daily basis, clean his house monthly, watch between 10-16 hours of television a day, groom himself, work on the computer daily, clean dishes, cook dinner for the family approximately 3 times a week, and drive weekly.  Tr. 135, 137, 140, 141   An addiction severity index, dated March 12, 2003, states that plaintiff gambles at the casino and wanted to play golf and fish while in drug treatment.  Tr. 297.  In addition, plaintiff testified at the hearing that he swims in an indoor swimming pool, and was able to do his own grocery shopping and cooking.  Tr. 485-86.  He also testified that he would play at the computer but not for long periods of time.  Tr. 486.  Further, plaintiff testified that he did some ice fishing during the winter and stated it was easier to ice fish because he could walk around.  Tr. 487.  Plaintiff belonged to the VFW and the American Legion, and stated that he attended the meetings of these organizations.  Id.  He also attended a life skills program that met three days a week for three hours.  Tr. 500.

Although a plaintiff does not need to establish that he is bedridden to be disabled, a claimant's credibility regarding subjective complaints of pain, fatigue, and depression can be undermined by daily activities.  See Haley v. Massanari, 258 F. 3d 742, 748 (8th Cir. 2001) (finding inconsistencies between subjective complaints of pain and daily living patterns where claimant could care for personal needs, wash dishes, change sheets, vacuum, wash cars, shop, cook, pay bills, drive, attend church, watch television, listen to the radio, visit friends and relatives, read and work on the

construction of his home); Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999) (finding that claimant's ability to cook some meals, water the flowers around his house, help his wife paint, watch television, go out for dinner, occasionally drive an automobile, and occasionally visit with friends, did not support a finding of total disability); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (concluding that the credibility of claimant's allegations of disabling pain was undermined by his daily activities, including caring for children, driving, and occasional grocery shopping).

Here, plaintiff engaged in a wide array of activities during the time frame in which he alleged he was suffering from disabling pain, rendering plaintiff's complaint that his condition precluded him from engaging in substantial gainful employment less than credible.  Thus, this Court concludes that the ALJ properly assessed plaintiff's RFC and his subjective testimony in light of the inconsistencies between the record and plaintiff's subjective complaints with regards to his claims of pain.  See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991) (finding that if the ALJ explicitly discredits the claimant 's testimony and gives a reasoned analysis, it is proper to defer to the ALJ's determination).  Even if evidence exists to support the opposite conclusion, that is not enough to reverse the finding of the ALJ.  See Buckner, 213 F.3d at 1011; Mitchell, 25 F.3d at 714.

**VI.   VE TESTIMONY**

Plaintiff claims that the ALJ failed to follow the social security rulings regarding reconciling the VE testimony with the Dictionary of Occupational Titles ("DOT") and its companion publication the Selected Characteristics of Occupations ("SCO").  See Pl.'s Mem. at p. 27.  In particular, plaintiff contends that because the VE did not consult the SCO with regards to postural limitations, the jobs provided to the ALJ by the VE were

not supported by substantial evidence.  Plaintiff's argument is without merit.  Plaintiff points to no substantive error, and cites to no authority that states an ALJ must question the VE as to whether a discrepancy exists under both the DOT and the SCO.  Social Security Ruling 00-4p, makes clear that the SCO is a companion publication to the DOT.  It explicitly states that the "evidence provided by a VE . . . should be consistent with the occupational information supplied by the DOT."   SSR 00-4p, Policy Interpretation Ruling: Titles II And XVI: Use of Vocational Expert and Vocational Specialist Evidence, and other Reliable Occupational Information In Disability Decisions 2000 WL 1898704 at *2 (December 4, 2000).  If there is a conflict between the DOT and the VE's evidence, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE . . . ."  Id.

In this matter, the ALJ asked for testimony from the VE reconciling the discrepancies between the VE's testimony and the DOT.  Tr. 527-28.  Moreover, the VE testified that while he consulted the DOT, the types and numbers of jobs that plaintiff could perform were based on his own experience, rather than the DOT or the SCO.  Id. Moreover, plaintiff did not identify a conflict at the time of the hearing with VE's testimony and the SCO, and similarly fails to do so now.  Tr. 532-36.

### RECOMMENDATION

For the reasons set forth above, this Court finds that the decision by the ALJ to deny plaintiff disability benefits is supported by substantial evidence on the record as a whole.

THEREFORE, IT IS RECOMMENDED THAT:

1.      Plaintiff's Motion for Summary Judgment [Docket No. 11] be **DENIED**; and

2.      Defendant's Motion for Summary Judgment [Docket No. 18] be

**GRANTED**.


Dated:        January 30, 2006

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.1(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **February 16 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.